IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PACIFIC BIOSCIENCES OF CALIFORNIA, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 17-275-LPS |
| | : | |
| OXFORD NANOPORE TECHNOLOGIES, INC. and OXFORD NANOPORE TECHNOLOGIES, LTD., | : | |
| | : | |
| Defendants. | : | |
| PACIFIC BIOSCIENCES OF CALIFORNIA, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 17-1353-LPS |
| | : | |
| OXFORD NANOPORE TECHNOLOGIES, INC. and OXFORD NANOPORE TECHNOLOGIES, LTD., | : | |
| | : | |
| Defendants. | : | |

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, DE

Edward R. Reines and Derek C. Walter, WEIL, GOTSHAL & MANGES LLP, Redwood Shores, CA

    Attorneys for Plaintiff

Jack B. Blumenfeld, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Stephen M. Hash, Puneet Kohli, and Samoneh Kadivar, BAKER BOTTS L.L.P., Austin, TX

    Attorneys for Defendants

**MEMORANDUM OPINION**

February 19, 2019
Wilmington, Delaware

**STARK, U.S. District Judge:**

Plaintiff Pacific Biosciences of California, Inc. ("PacBio") filed two suits against Defendant Oxford Nanopore Technologies, Inc. ("Oxford") on March 15, 2017 (C.A. No. 17-275 D.I. 1) and on September 25, 2017 (C.A. No. 17-1353 D.I. 1). Following significant motion practice in C.A. No. 17-1353,[1] PacBio filed a Second Amended Complaint ("SAC") on March 28, 2018. (D.I. 52) The SAC asserts U.S. Patent Nos. 9,678,056 (the "'056 patent"), 9,738,929 (the "'929 patent"), and 9,772,323 (the "'323 patent"). On April 25, Oxford filed an Answer to the SAC and Counterclaims against PacBio. (D.I. 64) On June 15, PacBio filed a motion to dismiss Oxford's Counterclaims for failure to state a claim (D.I. 86, 87), which Oxford responded to on July 11 (D.I. 99), to which PacBio replied on July 27 (D.I. 105). The parties submitted additional letters related to the motion to dismiss on August 15, September 28, and October 5. (D.I. 110, 140, 148)

In the meantime, on June 18, PacBio filed a motion to bifurcate (90, 91), which Oxford responded to on July 11 (D.I. 100), to which PacBio replied on July 27 (D.I. 104).

Following the Court's approval of PacBio's motion to amend its SAC to add another defendant – Oxford Nanopore Technologies, Ltd. ("ONT LTD") – on August 23, PacBio filed a Third Amended Complaint ("TAC") (D.I. 113) and, on September 6, Oxford filed an Answer and Counterclaims against PacBio (D.I. 119).[2] Also on September 6, Oxford filed similar Counterclaims in the related action. (C.A. No. 17-275 D.I. 89) On September 25, PacBio and

---

[1]Docket citations in this Opinion will be to the C.A. No. 17-1353 action, unless specified otherwise.

[2]Rather than answering PacBio's TAC, on September 24, ONT LTD moved to dismiss PacBio's TAC. (D.I. 137) That motion is not addressed in this opinion.

1

Oxford jointly notified the Court in both cases that PacBio's motion to dismiss Oxford's original counterclaims should be deemed to apply equally to Oxford's current counterclaims in both cases. (D.I. 109)

For the reasons stated below, the Court will grant PacBio's motion to dismiss and deny as moot PacBio's motion to bifurcate.

**I.     LEGAL STANDARDS**

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to

relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## II. DISCUSSION

### A. Inequitable Conduct
### (Counterclaims Seven ('056 Patent) and Eight ('323 Patent))

"A charge of inequitable conduct based on failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the [U.S. Patent and Trademark Office ('PTO' or 'USPTO')] and withheld that information with a specific intent to deceive the PTO." *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011). To prevail on the merits, "the accused infringer must prove by clear and

convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). "Intent and materiality are separate requirements." *Id.* "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.* However, intent may be inferred from indirect and circumstantial evidence. *See id.* "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." *Id.* (internal quotation marks omitted). Of course, proof by clear and convincing evidence is not required at the pleading stage. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329 n.5 (Fed. Cir. 2009). However, the allegations must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b) and must plead facts to support a plausible inference that all of the requirements of inequitable conduct can be proven by the required burden of proof. *See id.* at 1328-29.

With respect to Oxford's claim of inequitable conduct in the prosecution of the '056 patent, PacBio argues that Oxford failed to adequately plead specific intent to deceive the PTO. Oxford alleges that Robert Reamey, PacBio's Vice President of Intellectual Property, participated in prosecution of the '056 patent and had earlier participated in prosecution of the '672 patent. (*See* D.I. 119 ¶¶ 36-42) The PTO initially rejected the application of the '056 patent for double patenting over claims of the '672 patent. (*See id.* ¶¶ 43-44) In connection with prosecution of the '672 patent, the PTO initially rejected claims as anticipated by prior art references Bakhtina and Hanzel, yet Mr. Reamey withheld the Bakhtina and Hanzel references during prosecution of the '056 patent, "[d]espite the acknowledged materiality of the art cited by the Examiner" during

4

prosecution of the '672 patent. (*Id.* ¶ 51) Oxford further alleges that none of the amendments that ultimately led to issuance of the '672 patent's claims were disclosed to the Examiner in connection with the '056 patent. (*See id.*) To Oxford, all of this shows that Mr. Reamey "made the deliberate decision to withhold the prior art references . . . so as to avoid a rejection under 35 U.S.C. § 103 and obtain allowability of the '056 Patent claims" and that "but for Mr. Reamey's . . . withholding of the material prior art . . . , the USPTO would not have allowed the claims that issued in the '056 Patent." (*Id.* ¶ 61) Oxford further asserts that "[t]he single most reasonable inference that can be drawn from Mr. Reamey and PacBio's decision to withhold the prior art . . . , which were known to Mr. Reamey and PacBio and are material and not cumulative, is that Mr. Reamey and PacBio acted with specific intent to deceive the USPTO in order for PacBio to obtain issuance of the '056 Patent." (*Id.* ¶ 62)

The Court agrees with PacBio that these allegations are insufficient to plead a claim for inequitable conduct. Even if Mr. Reamey knew of the two prior art references and failed to disclose them during prosecution of the '056 patent, it is undisputed that Mr. Reamey disclosed the '672 patent during prosecution of the '056 patent. (*See* D.I. 119 ¶¶ 40-42) *See generally Mycone Dental Supply Co., Inc. v. Creative Nail Design, Inc.*, 2013 WL 3216145, at *7 (D.N.J. June 24, 2013) (dismissing inequitable conduct counterclaim for failing to plead deceptive intent with factual particularity and because "objective indications of . . . candor and good faith militate against an inference of deceptive intent based on the presently overly-generalized allegations"). Oxford's allegations, even at the pleading stage, fail to make a plausible allegation with reasonable particularity that Mr. Reamey acted with specific intent to deceive the PTO; such intent is simply not a reasonable inference, even taking the well-pled factual allegations as true.

5

As PacBio notes (*see* D.I. 105 at 4), Mr. Reamey did disclose and incorporate the patent that was later amended to distinguish its claims from the prior art. Accordingly, the Court will dismiss Counterclaim Seven.

Because PacBio has failed to adequately allege specific intent to deceive with respect to the '056 patent, it is unnecessary to reach PacBio's separate, independent grounds for dismissing this counterclaim that Oxford also failed to plead materiality.

Turning to the '323 patent, the Court concludes that Oxford's inequitable conduct counterclaim with respect to this patent must be dismissed as well. In connection with the '400 patent, the Court agrees with PacBio that Oxford failed to plead that Mr. Reamey made material misrepresentations regarding a prior art reference. (*See* D.I. 87 at 7-9) It is undisputed that the Examiner had the reference (Hibbs) before her during prosecution. (*See id.* at 8) "[T]he mere fact that a patent applicant attempts to distinguish its patent from the prior art does not constitute a material omission or misrepresentation where the patent examiner has the prior art before him or her, and therefore, is free to make his or her own conclusions regarding the claimed invention." *LifeScan, Inc. v. Home Diagnostics, Inc.*, 103 F. Supp. 2d 379, 386 (D. Del. 2000) (finding "even if Plaintiff's characterization of the . . . patents was inaccurate, . . . this characterization would not rise to the level of a material misrepresentation") (citing *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1482 (Fed. Cir. 1986)). Accordingly, the Court will grant the motion to dismiss Oxford's Counterclaim Eight.

**B.** ***Walker Process*** **(Counterclaims Nine and Ten ('056 Patent), Eleven and Twelve ('400 and '323 Patents))**

"The fraudulent procurement of a patent – known as *Walker Process* fraud – requires a

plaintiff to show, among other things, that the patentee committed fraud before the PTO, that the fraud caused the patent to issue, and that the patentee enforced the fraudulently procured patent." *In re Lipitor Antitrust Litig.*, 855 F.3d 126, 145 (3d Cir. 2017) (internal citation omitted). PacBio argues that Oxford's *Walker Process* counterclaims (Counterclaims Nine through Twelve) must be dismissed if Oxford's inequitable conduct counterclaims are dismissed because "the showing required for proving inequitable conduct and the showing required for proving the fraud component of *Walker Process* liability may be nearly identical," *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1307 (Fed. Cir. 2016), and, at the very least, *Walker Process* fraud requires even "higher threshold showings of both intent and materiality" than inequitable conduct, *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070-71 (Fed. Cir. 1998). (*See* D.I. 87 at 9-10) Oxford relies on the same arguments and defenses that it raised in defending its inequitable conduct claim. Accordingly, having dismissed the inequitable conduct counterclaims, the Court concludes that Counterclaims Nine through Twelve also fail to state claims on which Oxford may prevail, so they, too, will be dismissed.[3]

### C. Sherman Act Section 2 (Counterclaim Thirteen)

Counterclaim Thirteen alleges a violation of Section 2 of the Sherman Act based on PacBio's "cumulative acts" constituting an "anticompetitive scheme." (D.I. 119 ¶¶ 189-90) The factual allegations supporting this counterclaim are made in a section of the pleading entitled "Additional Facts Relating to Antitrust and Unfair Competition Counterclaims" that appears before Counterclaim Nine. (*Id.* ¶¶ 99-129) The alleged "cumulative acts" appear to fall into

---

[3]The Court need not address PacBio's further contention that Oxford's *Walker Process* counterclaims fail to plausibly define the relevant product market. (*See* D.I. 87 at 10-13)

7

three categories: (1) PacBio's "sham" litigation, (2) PacBio's "good faith" litigation in the International Trade Commission ("ITC") and abroad, and (3) PacBio's spreading of false and deceptive information. None of these allegations, individually or in combination, suffice to state a plausible claim.

With respect to the first category, in order to qualify as "sham" litigation, (1) "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) the lawsuit was subjectively motivated to "conceal[] an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process as . . . an anticompetitive weapon." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993) (internal quotation marks, alterations, and citations omitted). Oxford's sole basis for alleging the objective baselessness of PacBio's litigation is the same inequitable conduct claim already discussed above; it follows, then, for the same reasons the Court is dismissing the inequitable conduct counterclaims, that Oxford has failed to adequately allege sham litigation.

Second, Oxford alleges that "PacBio continues to assert its meritless infringement claims related to sequencing processing in the United States and other jurisdictions" despite the ITC's finding of no infringement. (D.I. 119 at ¶ 125) However, Oxford has failed to "causally connect" this to any sham litigation or other anticompetitive harm. *See Microsoft Mobile, Inc. v. Interdigital, Inc.*, 2016 WL 1464545, at *3-4 & n.3 (D. Del. Apr. 13, 2016) (noting "'good faith patent litigation' could be included 'as part of the anticompetitive scheme' only when 'causally connected' to other aspects of the scheme which produce independent anticompetitive harms"). Moreover, the ITC action indisputably covered different patents and the foreign litigation was

8

terminated via settlements. (*See* D.I. 87 at 14)

Third, Oxford's allegations that PacBio spread false and deceptive information are based on statements made in a self-published White Paper and by executives at public conferences. (*See* D.I. 119 at ¶¶ 120-22) "While false or deceptive statements may violate the antitrust laws in rare circumstances, at minimum, [Oxford] must show that such statements induced or were likely to induce reasonable reliance by consumers." *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 407 n.40 (3d Cir. 2016) (internal quotation marks and citations omitted). While Oxford alleges that PacBio's "anticompetitive scheme" caused customers "to pay supracompetitive prices for PacBio's products" (D.I. 119 ¶ 190) and caused Oxford "damage to its business reputation, being forced to expend substantial funds defending against PacBio's disparagement and systemic abuse of the judicial process, and in the form of foregone profits" (*id.* ¶ 191), Oxford has failed to allege that "the probable effect of [PacBio's] conduct was to substantially lessen competition in the relevant market, rather than to merely disadvantage rivals." *Eisai*, 821 F.3d at 407.

Accordingly, the Court will dismiss Counterclaim Thirteen.

### D. False Advertising Under the Lanham Act (Counterclaim Fourteen)

A false advertising claim under the Lanham Act requires the claimant to show: (1) "false or misleading statements" concerning a competitor's product, (2) "actual deception or at least a tendency to deceive a substantial portion of the intended audience," (3) "that the deception is material in that it is likely to influence purchasing decisions," (4) that the goods traveled in interstate commerce, and (5) a likelihood of injury to the claimant. *Pernod Ricard USA, LLC v.*

9

*Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (internal quotation marks omitted). Oxford's false advertising claim under the Lanham Act is based on three allegedly false and deceptive statements.

First, Oxford alleges that "PacBio's CEO, Michael Hunkapiller, falsely claimed during a JP Morgan Healthcare Conference in San Francisco in January 2018 that [Oxford's] MinION had extremely low accuracy rates and generated significant systematic errors." (D.I. 119 ¶ 122) Oxford belatedly attempts to supplement its formal allegations by stating in its opposition brief that Dr. Hunkapiller was a speaker at the conference and that he presented slides. (*See* D.I. 99 at 16) PacBio (and not Oxford) attached the slides to its reply brief and points out that they "include no mention of [Oxford] or its products." (D.I. 105 at 9; D.I. 106-1) Whether the slides are considered or not, the Court concludes that Oxford has failed to sufficiently allege facts to state a plausible claim of false advertising based on the Hunkapiller statements. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362, 265 (D. Del. 2009).

Second, Oxford alleges that PacBio made false statements in a White Paper posted on PacBio's website, which states that "due to systematic errors [Oxford's MinION] is currently unable to capture simple repeats reliably and suffers from an extremely high false positive rate for deletion calling." (D.I. 119 ¶ 120; D.I. 88-2) Third, and relatedly, Oxford alleges that PacBio's Chief Scientific Officer, Jonas Korsach, claimed at a conference that Oxford technology has "a 65% false detection rate." (D.I. 119 ¶ 122; D.I. 88-5) As PacBio point notes, those statements cite to a 2016 presentation by Wigard Kloosterman (*see* D.I. 88-2 at 6 n.29), an Oxford-sponsored researcher, whose presentation is located on Oxford's website and marked with Oxford's logo and copyright. (*See* D.I. 87 at 17; D.I. 88-5) Indeed, Dr. Korlach reproduces

the exact slide from Dr. Kloosterman's original presentation. (*See id.* at 17-18; D.I. 88-6) Even accepting as true Oxford's contention that the White Paper and Dr. Korsach have been proven incorrect by subsequent studies (*see* D.I. 110 at 55-56; D.I. 99 at 17-18), the White Paper and Dr. Korsach's presentation accurately reflect the data in the (Oxford-related) source cited. For these reasons, Oxford has failed to state a plausible claim of false advertising.[4]

Accordingly, the Court will dismiss Counterclaim Fourteen.

### E.  False Advertising Under Cal. Bus. and Prof. Code § 17500 (Counterclaim Fifteen)

As Oxford's false advertising claim under the Lanham Act has failed, Oxford's false advertising claim under California state law (Counterclaim Fifteen) must also be dismissed. *See Japan Telecom, Inc. v. Japan Telecom Am Inc.*, 287 F.3d 866, 875 (9th Cir. 2002).

### F.  Unfair Competition Under Cal. Bus. and Prof. Code § 17200 (Counterclaim Sixteen)

In Counterclaim Sixteen, Oxford alleges the same conduct that has already been addressed with respect to Counterclaims Seven through Fifteen, including PacBio's fraudulent procurement of patents from the PTO, PacBio's systematic campaign to spread misinformation about Oxford, and PacBio's use of serial and sham litigation, as violations of Section 2 of the Sherman Act, the Lanham Act, and § 17500 of the California Business and Professions Code. (*See* D.I. 119 ¶ 210) Since Oxford has failed to plead sufficient allegations for Counterclaims Seven through Fifteen to survive dismissal, Counterclaim Sixteen must also be dismissed.

---

[4] It is proper to consider the White Paper, Dr. Korlach's presentation slides, and Dr. Kloosterman's presentation video and slides at this stage as each of these documents was incorporated by reference in the counterclaims and is integral to the claim. *See D.M. ex rel. Ray v. Philadelphia Hous. Auth.*, 613 Fed. App'x 187, 189 n.6 (3d Cir. 2015).

11

### G. Motion to Bifurcate

PacBio also moves to bifurcate Counterclaims Nine through Thirteen. (D.I. 90) Having concluded that Counterclaims Nine through Thirteen must be dismissed, the motion to bifurcate is moot.

### III. CONCLUSION

For the foregoing reasons, the Court will grant PacBio's motion to dismiss and deny as moot PacBio's motion to bifurcate. An appropriate Order follows.