# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PACIFIC BIOSCIENCES OF CALIFORNIA, INC., <br><br> Plaintiff, <br><br> v. <br><br> OXFORD NANOPORE TECHNOLOGIES, INC. and OXFORD NANOPORE TECHNOLOGIES, LTD., <br><br> Defendants. | C.A. No. 17-275-LPS-CJB <br> C.A. No. 17-1353-LPS-CJB |

## MEMORANDUM ORDER

Having reviewed the proposed pretrial order (D.I. 448)[1] ("PTO") submitted by Plaintiff Pacific Biosciences of California, Inc. ("PacBio" or "Plaintiff") and Defendants Oxford Nanopore Technologies, Inc. ("ONT") and Oxford Nanopore Technologies, Ltd. ("ONT LTD") (collectively, "ONT" or "Defendants") in relation to the jury trial scheduled to begin on March 9, 2020, IT IS HEREBY ORDERED that:

1. PacBio's motion in limine ("MIL") number 1, to preclude ONT from offering evidence or arguing that it sought attorney advice related to PacBio's patents and that ONT has a general business practice of seeking attorney advice related to intellectual property, is GRANTED. ONT agrees that it did not disclose reliance on advice of counsel during discovery and, hence, will not "offer[] evidence of advice of counsel specific to the asserted patents." (D.I. 448 Ex. A at 65) Permitting ONT nonetheless to offer evidence it generally obtains advice of counsel "relating to whether it was infringing patents of others" and ONT's "normal practice" after receiving notification of patent application filings, as ONT seeks to do (*id.* at 65-66; *see*

---

[1] All references to the docket index are to C.A. No. 17-275.

1

*also id.* at 105) would, as PacBio contends (*id.* at 5), "unfairly imply that it sought, and received, exculpatory advice in this case without PacBio ever having [had] a fair opportunity to test what advice ONT *actually* sought and received." Permitting ONT to allow jurors to speculate about ONT receiving such advice would open the door to PacBio telling the jury that ONT withheld any legal advice it received and, thus, any such advice must have been adverse to ONT. The probative value, if any, of such arguments playing out before the jury is substantially outweighed by the risk of unfair prejudice, confusion, and waste of time. *See* Fed. R. Evid. 403.

2. The parties shall be prepared to argue PacBio's MIL number 2, to preclude evidence and argument related to Illumina, Inc.'s ("Illumina") unsuccessful attempt to acquire PacBio, at the pretrial conference ("PTC") tomorrow.

3. PacBio's MIL number 3, to prevent ONT from using "pejorative" terms (such as "non-practicing entity," "NPE," and "paper patents") and from presenting evidence about the consequences of this litigation, is GRANTED. The undisputed fact that PacBio does not practice the patents-in-suit is probative of issues including damages and enablement, and both sides may present evidence (in their case-in-chief and rebuttal) and argument with respect to this reality. But it would be incorrect and unfairly prejudicial to characterize PacBio as an entity that does not practice its patents. Further, it would be inappropriate to put before the jury evidence or argument about the potential impact of a verdict in favor of PacBio – such as higher prices or slower medical research – as these issues are not for the jury to decide, are not relevant to any issue the jury will decide, and create an unacceptable risk of unfair prejudice (as the jury might be deterred from returning a verdict in favor of PacBio even if it finds PacBio has met its burden of proof). *See Evolved Wireless, LLC v. Apple Inc.*, 2019 WL 1100471, at *6 (D. Del. Mar. 7, 2009) (excluding evidence that patentee sought injunctive relief). Notwithstanding this ruling, of

2

course any party may make reference to the fact that a patent includes a right to exclude, a legal reality the jury will also learn through the Court's instructions. Finally, the Court is not persuaded by ONT's suggestion that PacBio should not be permitted to label ONT a "copyist," as the issue of whether ONT has copied PacBio's intellectual property is relevant to PacBio's allegations of willful infringement and to secondary considerations of non-obviousness. Any unfair prejudice to ONT from this term does not substantially outweigh its probative value.

4. ONT's MIL number 1, to preclude PacBio from referencing ONT products that have not been sold during the relevant period – including SmidgION, the HMM basecalling algorithm ("HMM"), and 2DC – is DENIED. The parties have agreed not to mention SmidgION. (D.I. 448 Ex. B at 154 n.1) HMM is relevant to PacBio's '400 and '323 patent infringement allegations because PacBio must show that the RNN basecalling algorithm ("RNN") uses "calibration information," and an ONT witness testified that HMM was "probably" used to develop calibration information for RNN. (D.I. 448 Ex. B at 78, 86, 100-01) The documents related to 2DC that PacBio seeks to present are probative of the obviousness or nonobviousness of the '929 patent. (*See* D.I. 448 Ex. B at 79-80) The Court is not persuaded by ONT's arguments that any of this evidence would be unduly confusing to the jury.

5. ONT's MIL number 2, to preclude evidence related to ONT's knowledge of patents PacBio applied for or owns other than the patents-in-suit, is DENIED. Evidence that ONT executives generally knew about, monitored, and analyzed PacBio's patent portfolio, and how they acted in connection with that knowledge, is probative of PacBio's claims of induced and willful infringement of the patents-in-suit, including to the extent this evidence may be probative of the credibility of ONT's executives. (*See* D.I. 448 Ex. B at 162) The Court is not persuaded by ONT's arguments that this evidence will confuse the jury and unfairly prejudice

ONT. Moreover, excluding this evidence would unfairly prejudice PacBio. (*See id.*) ("This overwhelming evidence is highly relevant to and probative of ONT's state of mind regarding willfulness, because it shows that ONT surveyed PacBio's patent rights in nanopore technology for years, and deliberately chose to develop and sell infringing products, despite the fact that PacBio's IP admittedly presented freedom to operate issues.")

6. ONT's MIL number 3, to preclude evidence related to other legal proceedings, including a prior UK patent litigation ("UK litigation") and an inter partes review ("IPR"), is DENIED. PCB-DE-0019529 (the "UK letter") is probative of how ONT's products work. While this and other documents may need to be redacted (for example, to eliminate confusing or unfairly prejudicial references to other patents or other proceedings), the probative value of ONT's admissions regarding key issues is not eliminated simply because they arose in connection with other matters (including prior motions in the instant case). Other UK litigation documents cited by PacBio expert Dr. Dessimoz – including PCB-DE-0984168 and PCB-DE-0984248 – are also probative of factual issues that will be tried before the jury and are not likely to create jury confusion. (*See* D.I. 448 Ex. B at 359; *see also* D.I. 448 Ex. B at 237) Dr. Ha's IPR declaration and ONT's IPR petition may properly be used to impeach ONT's witnesses, provided that the parties reference them as being related to "another matter," without disclosing the nature, details, or results of the IPR or any other proceeding. *See Implicit, LLC v. NetScout Sys., Inc.*, 2019 WL 6873030, at *4 (E.D. Tex. Nov. 21, 2019); *Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*, 2019 WL 77046, at *1 (D. Del. Jan. 2, 2019). The probative value of such evidence is not nearly outweighed by the risk of unfair prejudice or jury confusion or any other concern of Rule 403.

Additionally, the parties shall be prepared to discuss at tomorrow's PTC:

4

A. ONT's suggestion, in its reply in support of its MIL number 2, that it should be permitted to introduce evidence regarding other proceedings (including before the International Trade Commission) as probative of its state of mind in and around 2017.

B. Precisely which claims are being asserted with respect to infringement, non-infringement, and invalidity, and which products are accused of infringement.

C. How PacBio proposes the Court and parties refer to Defendants at trial. (*See* PTO at 3 n.1)

D. Whether the subject matter eligibility of the '929 patent is at issue in this trial. (*See* PTO at 15, 27-28)

E. Whether evidence and argument relating to simultaneous invention will be presented at trial. (*See* PTO at 36 n.9)

F. Whether the courtroom will be closed for any portion of the trial and the parties' burden to show that any such closing is proper. (*See* PTO at 64)

G. PacBio's request that all attorneys be instructed to refrain from personally vouching for or arguing about the scientific merits or facts at issue based on personal knowledge or education. (*see* PTO at 64-65)

H. ONT's request for a bench trial on indefiniteness of the '056 patent. (*See* PTO at 65)

I. ONT's request for "clarification" or construction of certain claim terms (*see* PTO at 65-66; D.I. 451) and PacBio's contention that such requests are "waived and belated" (PTO at 65 n.14; D.I. 452), in light of the Court's obligation to resolve material claim construction disputes prior to submitting the case to the jury, *see O2 Micro Int'l Ltd. v. Beyond Innovation*

*Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.").

    J.      ONT's request that the Court rule that non-patent journal articles cannot be incorporated by reference with respect to written description and enablement. (*See* PTO at 66)

    K.      How the Court should proceed with respect to ONT's recently-filed motion for leave to serve a supplemental damages expert report (D.I. 458, 459) and whether that motion is impacted by the Court's rulings on the parties' motions *in limine*.

The order of presentation at trial will follow the burden of proof (*see* PTO at 50) and both sides will have an opportunity to present proper rebuttal evidence on issues on which they bear the burden of proof.

When a witness is called to testify by deposition at trial (*see* PTO at 56), the party calling the witness shall provide the Court with THREE copies of the transcript of the designations and counter-designations that will be read or played (one each for the Judge, the law clerk, and the court reporter).

The parties shall not file written motions for judgment as a matter of law ("JMOLs"), or briefs supporting oral JMOLs, unless the Court expressly invites such filings. (*See* PTO at 63)

The parties shall provide the Court with a proposed preliminary jury instruction regarding documents marked as confidential. (*See* PTO at 64)

Having considered the extent of the parties' disputes to be tried – including infringement (by multiple accused products) and invalidity (on multiple theories) of four patents and at least 12 claims, as well as inducement, willfulness, and damages – and the parties' joint request for 18 hours per side, it is the Court's view that no more than 14 to 16 hours per side are necessary in order for each side to fully and fairly present its case. The parties shall be prepared to discuss at

the PTC whether they are continuing to request more than 14 hours per side and, if so, to defend their request.

Finally, given the Court's other commitments, trial will be held at some or all of the following times, as long as one or both sides have some portion of their allocated trial time remaining:

| | |
|---|---|
| Monday, March 9: | 8:30 a.m. to 5:00 p.m. |
| Tuesday, March 10: | 8:30 a.m. to 5:00 p.m. |
| Wednesday, March 11: | 8:30 a.m. to 5:00 p.m. |
| Thursday, March 12: | 8:30 a.m. to 12:30 p.m. |
| Friday, March 13: | 9:00 a.m. to 4:00 p.m. |
| Monday, March 16: | 8:30 a.m. to 5:00 p.m. |
| Tuesday, March 17: | 8:30 a.m. to 5:00 p.m. |
| Wednesday, March 18: | 8:30 a.m. to 3:00 p.m. |

February 27, 2020
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT